IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAMONA WILSFORD,

    Plaintiff,

v.                                                                                          CV 21-0428 JHR/SMV

FARMERS INSURANCE COMPANY
OF ARIZONA,

    Defendant.

# MEMORANDUM OPINION AND ORDER

      This case is before the Court on the parties' cross-motions for summary judgment. [Docs. 15 & 16]. Having carefully considered the facts of this case against the pertinent law and this Court's recent interpretation of that law, the undersigned grants summary judgment in favor of Defendant Farmers Insurance Company of Arizona ("Farmers"), for the following reasons:

**I.**      **PROCEDURAL HISTORY**

      Wilsford filed a Complaint for Declaratory Judgment on March 31, 2021, in the Second Judicial District Court for the State of New Mexico. [*See* Doc. 1-1]. Wilsford alleges that she was seriously injured after being rear-ended by a drunk driver operating a stolen vehicle. [Doc. 1-1, pp. 1-2]. Wilsford's vehicle, a Dodge Caravan, was insured by Farmers through a policy issued to Wilsford's father. [*Id.*, p. 2]. Wilsford alleges that she settled with the insurers of the drunk driver and the owner of the stolen vehicle for a total of $100,000. [*Id.*, p. 2].

      She then turned to Farmers, seeking to recover an additional $100,000 in coverage under the applicable Uninsured/Underinsured ("UM/UIM") Bodily Injury policy, which covered two vehicles at $100,000 per person/$300,000 per accident limits. [*Id.*]. Implicit in Wilsford's demand is that the applicable policies be stacked. Wilsford admits that the policy owner signed an

1

underinsured motorist rejection form which limits her to coverage of $25,000 per person/$50,000 per collision, but she believes that rejection form is unenforceable as a matter of law, rendering the full additional coverage of $100,000 per person/$300,000 per collision available to her. [*Id.*].

Wilsford asked the state court to declare the rejection unenforceable as a matter of law pursuant to *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 22, 149 N.M. 162, 169, because Farmers did not deliver a copy of the rejection form to her father, the policy holder, when it renewed the policy on or about May 24, 2018. [*Id.*, pp. 3-4]. Wilsford further alleges that Farmers did not include several endorsements memorializing her father's rejection of the extra coverage with the Renewal, despite representing that the lower limits of coverage were present on the Declarations Page attached to the Renewal. [*Id.*, p. 4]. Wilsford's father signed the form and received copies of the endorsements on or about January 20, 2017. [*Id.*, pp. 3-4)]. Wilsford asked the court to declare the policy unlawful, and reform it to include the extra coverage. [*Id.*, p. 5].

The case was timely removed to federal court on May 6, 2021. [*See* Doc. 1]. Diversity jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a) because the policy limits sought exceed $75,000. [*Id.*]. Farmers answered the Complaint on May 6, 2021. [Doc. 3]. The parties consented to have the undersigned Magistrate Judge conduct dispositive proceedings in this matter and enter final judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). [Docs. 9, 10, 11]. Magistrate Judge Vidmar entered a briefing schedule on June 17, 2021, and the parties submitted a Joint Statement of Material Facts on July 30, 2021, and completed briefing on their cross-motions for summary judgment on September 8, 2021. [Docs. 15, 16, 17, 18, 20, 21, 22].

**II.   SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

### III.     UNDISPUTED MATERIAL FACTS[1]

1. Farmers issued a personal auto policy (No. 19480-92-20) to, Raymond Zellner and Nellie Jean Zellner (The Policy).

2. On October 5, 2018, Wilsford was involved in an auto accident while driving a 2006 Dodge Van, which is owned by her father, Raymond Zellner, and listed as "Vehicle 1" on The Policy. Case 1:21-cv-00428-JHR-SMV Document 13 Filed 07/30/21 Page 1 of 3.

3. Exhibit 1 is a true and correct copy of a form entitled, "Auto Insurance Uninsured and Underinsured Motorist Bodily Injury and Uninsured and Underinsured Motorist Property Damage Selection of Limits – New Mexico" (UM Selection Form).

4. Exhibit 1 was initialed and signed by Raymond Zellner on January 20, 2018.

5. Exhibit 1 indicates Mr. Zellner selected limits of $25,000.00 per person/$50,000 per occurrence in uninsured/underinsured motorist bodily injury (UM/UIM-BI) coverage for the 2006 Dodge Van, which is the vehicle Plaintiff was driving at the time of the subject auto accident and rejected UM/UIM-BI coverage for the other vehicle listed on the policy.

6. Exhibit 1 contains a menu of coverage options entitled "Available Coverage Limits and Premium Cost", which states the premium for $25,000 of UM/UIM-BI coverage on Vehicle 1 is

---

[1] The Court copies the parties' facts verbatim, omitting quotation marks. [*See generally* Doc. 13 (Joint Statement of Undisputed Facts); Doc. 14 (Exhibits).

$21.60 and the premium for $10,000 of uninsured/underinsured motorist property damage (UM/UIM-PD) coverage on Vehicle 1 is $7.40.

7. Exhibit 2 is a true and correct copy of the certified copy of The Policy (number 19480-92-20), which was in effect at the time of the subject auto accident.

8. Exhibit 2 was provided on February 4, 2021, by Farmers to Plaintiff's counsel.

9. Exhibit 2 is comprised of a cover letter entitled "Auto Insurance Renewal", a 3-page "Auto Insurance Declaration Page", a 24-page Personal Auto Policy, and 4 policy endorsements. *See* Exhibit 2 at pages 2-37 (of the 37-page PDF).

10. Exhibit 2 includes an endorsement (Form NM027-1st Edition) entitled "Endorsement Rejecting Uninsured Motorist Limits That Match Your Policy's Limits".

11. Exhibit 2 also includes an endorsement (Form NM026-1st Edition) entitled "Endorsement Deleting Uninsured Motorist Coverage."

### IV.   ADDITIONAL FACTS

Wilsford proffers several additional facts concerning the Renewal. [Doc. 15, pp. 2-3]. These facts pertain to the contents of the renewal. For the following reasons, the Court finds these facts to be immaterial under the substantive law of New Mexico.

### V.   APPLICABLE NEW MEXICO SUBSTANTIVE LAW

In this diversity action, the Court applies the substantive law of New Mexico to the legal questions at issue. *See Patterson v. Powder Monarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019). Thus, the Court must follow the most recent decisions of New Mexico's Supreme Court. *Id.* Where no controlling decision exists, the Court must attempt to predict what the New Mexico Supreme Court would do, "seeking guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting

the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)). The Court is also bound by the Tenth Circuit's "own prior interpretations of state law … unless an intervening decision of the state's highest court has resolved the issue." *Id.* (quoting *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010)).

Relevant here is this Court's decision in *Hawley v. Farm Bureau Prop. & Cas. Ins. Co.*, 2019 WL 4747996 (D.N.M. Sept. 30, 2019), *aff'd*, *Hawley v. Farm Bureau Prop. & Cas. Ins. Co.*, 840 F. App'x 354 (10th Cir. 2021) (unpublished). As the Tenth Circuit reiterated when considering the current state of New Mexico law:

> By statute, motor vehicle insurance issued in New Mexico must offer UM/UIM coverage. *See* N.M. Stat. § 66-5-301(A), (B); *see also* N.M. Code R. § 13.12.3 (regulation addressing UM coverage). The insurer must offer levels of UM/UIM coverage above a statutory minimum and up to the liability coverage limit. *See* N.M. Stat. § 66-5-301(A); *Weed Warrior Servs.*, 245 P.3d at 1211. An insured may decline UM/UIM coverage. *See* N.M. Stat. § 66-5-301(C).
>
> The New Mexico Supreme Court has observed that this "UM/UIM statute is intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Weed Warrior Servs.*, 245 P.3d at 1211 (quotation omitted). Thus, "the uninsured motorist statute must be liberally construed to implement the purpose of compensating those injured through no fault of their own." *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092, 1095 (1985). Ambiguous policies "are construed against the insurer." *See Rodriguez v. Windsor Ins. Co.*, 118 N.M. 127, 879 P.2d 759, 763 (1994), *modified*, *Montano v. Allstate Indem. Co.*, 135 N.M. 681, 92 P.3d 1255, 1256 (2004). As a result, "UM/UIM coverage [is] the default when the insured has not exercised the right to reject." *Marckstadt v. Lockheed Martin Corp.*, 147 N.M. 678, 228 P.3d 462, 468 (2009).
>
> In *Jordan v. Allstate Insurance Co.*, 149 N.M. 162, 245 P.3d 1214 (2010), the New Mexico Supreme Court identified the steps an insurer must take "to obtain a valid rejection" of UM/UIM coverage. *See id.* at 1221. The court expressed concern that insurers were "offer[ing] UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed" or "knowing and intelligent" decision to reject UM/UIM coverage. *See id.* at 1220. To remedy this problem, the court said that insurers must

5

> (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject....
>
> *Id.* at 1221. If an insurer fails to meet these requirements, "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *See id.*

*Hawley v. Farm Bureau Prop. & Cas. Ins. Co.*, 840 F. App'x 354, 359 (10th Cir. 2021).[2]

As was explained by this Court in *Hawley*, the specifics of New Mexico's uninsured motorist/underinsured motorist (UM/UIM) coverage scheme are important to its application. First, New Mexico requires that UM/UIM coverage be available with every motor vehicle liability policy, § 66-5-208(A, B), but allows the purchaser to reject the coverage, § 66-5-208(C). In other words, New Mexico does not *mandate* that UM/UIM coverage be purchased, but that it be offered so that every purchaser of motor vehicle liability insurance has a real opportunity to obtain that additional coverage. Second, distinct from most automobile liability coverage, UM/UIM coverage generally is not tied to any specific motor vehicle but goes with the person, even when occupying a vehicle not on the same policy or occupying no vehicle at the time of injury by a negligent driver. *See Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 11, 87 N.M. 327, 330, 533 P.2d 100, 103; *Lopez v. Foundation Reserve Ins. Co.*, 1982-NMSC-034, ¶ 8, 98 N.M. 166, 169, 646 P.2d 1230, 1233. An insurer must offer UM/UIM coverage equivalent to the minimum mandatory liability coverage. NMSA 1978, § 66-5-301 (1983); § 66-5-215(A) (1983). Third, an insurer must

---

[2] *See also Hawley*, 2019 WL 4747996, at *3 (Explaining that "New Mexico requires all motor vehicle, unless exempted, to have liability insurance or other acceptance self-insurance. NMSA 1978, § 66-5-205(A) and (B) (2013). A minimum level of coverage is set by statute, NMSA 1978, § 66-5-208(A – C) (1983), currently $25,000 for bodily injury to or death of a person and $50,000 for all persons plus $10,000 for property damage caused in any one accident. New Mexico recognizes, however, that some negligent drivers will not comply and will not have the mandatory liability insurance and others will meet the minimum requirements but will not have enough liability insurance to cover all the damages they cause. To address those problems, New Mexico requires that insurers offer, to those who purchase motor vehicle liability insurance, a separate coverage to provide at least the same benefit as the mandatory coverage when the tortfeasor's insurance is lacking.").

also offer coverage equivalent in amount to the purchaser's own liability coverage limit if greater than the mandatory minimum. § 66-5-301(A).[3]

Public policy considerations support and inform New Mexico's statutory structure. The purpose of UM/UIM coverage is to protect persons who are injured by negligent drivers from the consequences of the tortfeasor's failure to have liability insurance. *Chavez*, 1975-NMSC-011, ¶ 7, 87 N.M. at 329, 533 P.2d at 102. Because New Mexico's UM/UIM statute is remedial, it must be liberally construed to accomplish its purpose, and any limitations of the statute (*i.e.*, insured must be legally entitled to damages and negligent driver must be "uninsured") must be construed strictly. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 1985-NMSC-073, ¶ 11, 103 N.M. 216, 219, 704 P.2d 1092, 1095; *see also Foundation Reserve v. Marin*, 1990-NMSC-022, ¶ 9, 109 N.M. 533, 535, 787 P.2d 452, 454 (overruling *Willey v. Farmers Ins. Group*, 1974-NMSC-054, 86 N.M. 325, 523 P.2d 1351, for misinterpreting the definition of an "uninsured" driver). Moreover, while insurance policies are contracts and interpreted by contract principles, *Thompson v. Occidental Life Ins. Co. v. Cal.*, 1977-NMCA-071, ¶ 4, 90 N.M. 620, 621, 567 P.2d 62, 63, interpretation must be compatible with public policies expressed by applicable statutes and regulations. *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 159, 803 P.2d 243, 248. Ambiguities in UM/UIM policy provisions are construed by the court against the insurer and in favor of the reasonable expectations of the insured. *Rodriguez v. Windsor*, 1994-NMSC-075, ¶ 12, 118 N.M. 127, 130, 879 P.2d 759, 762; *see also Lopez v. Foundation Reserve Inx. Co., Inc.*, 1982-NMSC-034, ¶ 16, 98 N.M. 166, 170, 646 P.2d 1230, 1230 ("Another reason for intra-policy stacking is that if fulfills the reasonable expectations of the insured." (citations omitted)). The upshot of

---

[3] In addition to those mandatory requirements upon the insurer, the UM/UIM statute contemplates that the insurer and insured can agree to UM/UIM coverage in an intermediate amount, greater than the minimum but less than the maximum. NMSA 1978, § 66-5-301(A) (Stating that UM/UIM policies may provide "such higher limits as may be desired by the insured, but up to the limits" (of the insured's liability coverage)).

7

*Hawley* is that UM/UIM coverage rejection can be effective if the required factors are present.[4] Once an insured properly rejects UM/UIM coverage, the insurer can assume rejection for all future renewals unless the insured later requests UM/UIM coverage in writing. NMSA 1978, § 66-5-301(C) (1983).

Premium quotes are constituents of a "meaningful offer." An offer of coverage is not meaningful unless it includes a premium quote for each offered coverage level. *See Jordan*, 2010-NMSC-051; *see also Whelan v. State Farm Mut. Auto. Inc. Co.*, 2014-NMSC-021, 329 P.3d 646. An insurer must provide a premium quote for each level of stacking that it offers, *Ullman v. Safeway Insurance Company*, 2017-NMCA-071, ¶ 45, 404 P.3d 434, 447, *cert. granted* (Aug. 24, 2017), although it need not make an express offer of every possible stacking combination. *See Jaramillo v. Government Employees Ins. Co.*, 573 F. App'x 733 (10th Cir. 2014).

To honor the legislative intent of a "meaningful offer" of coverage and a knowing and intelligent decision to forego it, *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678, 684, 228 P.3d 462, 468, "some positive act" is required for a valid rejection of the maximum UM/UIM coverage under New Mexico law. *Id.* at ¶ 15. New Mexico's implementing regulation for rejection of UM/UIM coverage requires that every rejection be written and signed, that it be made a part of the insurance policy, and that a notification of the rejection be delivered to the insured. NMAC 13.12.1.3.9. The purpose of the incorporation and delivery requirements is to provide the insured the opportunity to reflect upon and reconsider the choice later. *Romero*, 199-NMSC-111, ¶ 9; *see also Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 14, 122 N.M. 221, 224, 923

---

[4] A choice of any UM/UIM coverage amount less than the equivalent of the policy's liability limits is considered a rejection of the higher amount and must comply with all legal requirements for rejection. *Romero v. Progressive Northwestern Ins. Co.*, 2010-NMCA-024, ¶ 24, 148 N.M. 97, 102, 230 P.3d 844, 849; *see also* citations in *Progressive Northwestern Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 1, 149 N.M. 157, 158, 245 P.3d 1209, 1210-11.

P.2d 588, 591. The requirement that a rejection of UM/UIM coverage must be signed has been construed to mean that a signature must accompany the act of rejection, although the specific evidence of rejection can be unsigned. *Marckstadt*, 2010-NMSC-001, ¶ 4. Important for this case, the notification of rejection need not be a copy of the original rejection document. *Id*.

## VI.   ISSUES

A.   Should the Court reform the Policy to provide the demanded additional coverage because the UM selection form was not "meaningfully incorporated into the policy delivered to" the policy holder when Farmers sent the Renewal?

B.   Should the Court reform the Policy because it is ambiguous where there is no menu of coverage options contained in the Renewal Declarations Page and there are endorsements that Wilsford asserts are "conflicting"? Or, were the documents presented to Wilsford's father "legally adequate to meaningfully inform" the insured, as Farmers argues?

## VII.   APPLICATION AND ANALYSIS

Having considered these issues alongside the pertinent legal principles stated above and in *Hawley*, the Court concludes:

**A. New Mexico law does not require an insurer to send a complete copy of the policy to the insured upon renewal. Once it has delivered the initial policy an insurer meets its legal obligations if it meaningfully informs the insured that he can reform the coverage. Farmers met its legal burden in this case.**

The requirement that a rejection of UM/UIM coverage must be signed has been construed to mean that a signature must accompany the act of rejection, although the specific evidence of rejection can be unsigned. *Marckstadt*, 2010-NMSC-001, ¶ 4. Thus, the notification of rejection need not be a copy of the original rejection document. Here, Farmers delivered a copy of the policy and all pertinent endorsements to Wilsford's father at the inception of the policy but did not provide him with a copy of the policy when it sent him the renewal documents. Farmers' act of delivering

9

a copy of the policy and endorsements to Wilsford's father was sufficient as a matter of law. The question is whether Farmers' affirmative acts at renewal, which did not include proffer of the initial policy documents, complied with New Mexico law.

The Court finds that it does. Farmers so complied by providing a copy of the policy and endorsements to the policy holder at the inception of the coverage period in this case and by providing sufficient documentation of the policy to permit Wilsford's father to reassess his need for additional coverage. The law does not require a full proffer of the initiating documents at every renewal. Wilsford's argument does not account for *Marckstadt*, and is premised on a misreading of *Jordan*, which did not intend to require the same document exchange upon renewal that occurred at the inception of the policy. Therefore, Wilsford's policy will not be reformed because Farmers did not breach its duties under New Mexico law.

**B. The documents presented to the policy holder at renewal in this case were legally adequate to inform him of his right to increase the limits of his UM/UIM coverage and were not legally ambiguous.**

As the Court's synopsis of the pertinent law makes clear, UM/UIM coverage rejection can be effective if the relevant factors are present. The insurer must: (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject. New Mexico's implementing regulation for rejection of UM/UIM coverage requires that every rejection be written and signed, that it be made a part of the insurance policy, and that a notification of the rejection be delivered to the insured. NMAC 13.12.1.3.9.

The purpose of the incorporation and delivery requirements is to provide the insured the opportunity to reflect upon and reconsider the choice later. *Romero*, 199-NMSC-111, ¶ 9; *see also Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 14, 122 N.M. 221, 224, 923 P.2d 588, 591. The requirement that a rejection of UM/UIM coverage must be signed has been construed to mean that a signature must accompany the act of rejection, although the specific evidence of rejection can be unsigned. *Marckstadt*, 2010-NMSC-001, ¶ 4. The notification of rejection need not be a copy of the original rejection document. *Id.*

Here, the fact is Farmers did not send a copy of the entire policy to the policy holder at the time of renewal. However, it sent renewal documents including a declarations page that stated the general terms of the policy coverage, and specifically referred to the endorsements where Wilsford's father rejected the coverage that Wilsford now seeks. These actions were sufficient under New Mexico law, which does not require the steps Wilsford is asking the Court to impose on Farmers in this case. The policy holder received adequate information to permit him an opportunity to reflect on the amount of coverage he had purchased and to decide whether or not to reform his policy to provide for additional underinsured motorist coverage. Mr. Zellner elected not to increase his underinsured motorist coverage despite being reminded of his explicit rejections when Farmers sent him the renewal documents. The renewal documents sent in this case were not ambiguous and Farmers was not required by law to send the policy holder a copy of the original policy and endorsements upon renewal.

### VIII. **CONCLUSION AND ORDER**

The material facts of this matter are not in dispute and demonstrate that Farmers Insurance Company of Arizona is entitled to judgment as a matter of law. A Final Judgment pursuant to Federal Rule of Civil Procedure 58 will be entered concurrently.

SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
Presiding by Consent